## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY BUSH,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SERGEANT JAMES RENEGAR,** *et al.,* | : | **No. 18-327** |
| *Defendants* | : | |
| | : | |

## MEMORANDUM

PRATTER, J.                                                     SEPTEMBER 8 , 2020

### INTRODUCTION

After a visit to see her mother in a skilled nursing facility went awry, Mary Bush was asked to leave the facility. Shortly after Ms. Bush left the building, Sgt. James Renegar, and later Sgt. Ted Lewis, used force in effectuating her arrest. Sgt. Lewis then drove Ms. Bush to a hospital for treatment for her arm, which Ms. Bush claimed was necessitated by the sergeants' use of force against her. According to the sergeants, they used an objectively reasonable amount of force in order to obtain the compliance of a resisting arrestee. Ms. Bush, however, contends that, without any provocation, the sergeants knocked her phone out of her hands, slammed her to the ground, handcuffed, pulled, carried her and then shoved her into the back of a patrol car, and later slammed her against the patrol car.

The sergeants moved for summary judgment with respect to all of Ms. Bush's claims. Ms. Bush withdrew some claims which she conceded could not survive summary judgment. In this Memorandum, the Court considers the remaining claims: excessive force and state assault and battery claims against both sergeants and the failure-to-intervene claim against Sgt. Lewis. The sergeants contend that the Court should grant summary judgment because their actions were

1

objectively reasonable, or, alternatively, that they are entitled to qualified immunity. Because a jury must resolve genuine disputes of material facts relating to the objective reasonableness of the sergeants' actions, the Court denies the motion for summary judgment as to the claims which were not withdrawn. The motion for summary judgment is denied without prejudice with respect to the sergeants' assertion of qualified immunity.

BACKGROUND

## I.    Procedural Background

Ms. Bush, then proceeding *pro se*, initially brought a full array of claims against East Goshen Township, Sgt. Renegar, and Sgt. Lewis after she was arrested in January 2016. Defendants moved to dismiss all but Ms. Bush's § 1983 excessive force claim brought against Sgt. Renegar. The Court dismissed most of Ms. Bush's claims but granted her leave to amend her complaint. After retaining counsel, Ms. Bush filed an amended complaint alleging excessive force, failure-to-intervene, and conspiracy claims under § 1983 as well as assault and battery and conversion claims under state law. The sergeants filed a partial motion to dismiss the conspiracy claim, which the Court granted.

The sergeants moved for summary judgment for the remaining claims. In her response, Ms. Bush stated that she did not oppose the sergeants' request to dismiss her conversion claim and therefore agreed to withdraw that claim. After the Court heard oral argument, Ms. Bush wrote in a letter to the Court that she "concedes that the [failure-to-intervene] against Defendant Renegar is not appropriate under the applicable case law and agrees to withdraw this claim." Bush Letter dated June 29, 2020 (Doc. No. 50). Because Ms. Bush has withdrawn her conversion claim against both sergeants and her failure-to-intervene claim against Sgt. Renegar, the Court addresses only

2

her excessive force and assault and battery claims against both sergeants and her failure-to-intervene claim against Sgt. Lewis.

## II.    Factual Background

Ms. Bush's mother, Genevieve Bush, is a resident of Park Lane at Bellingham, a skilled nursing facility in West Chester, Pennsylvania. In January 2016, the president of Guardian Services of Pennsylvania wrote a letter stating that Ms. Bush was no longer allowed to visit her mother there.[1]  The following day, Ms. Bush drove to Park Lane to visit her mother. While Ms. Bush was inside the Park Lane facility and walking to her mother's room, Kimberly Goodall, the Administrator at Park Lane, approached Ms. Bush to inform her that she was not permitted there. Ms. Bush continued to her mother's room. Deborah Ferry, the Director of Nursing at Park Lane, soon arrived at Genevieve's room and stood at the doorway with Ms. Goodall.

Ms. Bush called the Westtown East Goshen Police Department, which dispatched Sgt. Renegar. After Sgt. Renegar arrived, Ms. Bush informed Sgt. Renegar that she did not receive any letter stating that she could not enter Park Lane. Ms. Bush was shown a copy of the letter. Sgt. Renegar then asked Mses. Ferry and Goodall whether they wanted Ms. Bush to leave the Park Lane property. After Mses. Ferry and Goodall responded in the affirmative, Ms. Bush went to the receptionist's desk, signed out, and left the building. Sgt. Renegar escorted Ms. Bush out of the building to ensure that she left the premises, as requested by the Park Lane staff.

Immediately upon leaving the building, Ms. Bush called 911 for a wellness check on behalf of her mother. Ms. Bush told the 911 operator that she had "a trooper standing here that's harassing

---

[1]      Ms. Bush objects that any facts concerning Genevieve's guardianship are not relevant. Although these facts are not relevant to determining whether Ms. Bush's constitutional rights were violated, they are included only to provide general context for the ensuing altercation.

3

[her]" and that she feared for her mother's life. Def.s' Ex. K at 00:01-00:09 (Doc. No. 29-11). Ms. Bush was slowly walking away from the building while she was on the phone.

According to Sgt. Renegar, he told Ms. Bush to continue walking and that she needed to leave the Park Lane property. Sgt. Renegar testified that in response to his instruction, Ms. Bush stopped walking and faced the building. Sgt. Renegar claims that after Ms. Bush stopped walking, he told her, "Ma'am, I don't want to arrest you." Renegar Dep. Tr. at 161:23-162:17, Def.s' Ex. A (Doc. No. 29-1). Ms. Bush, however, contends that Sgt. Renegar never instructed her in any way. She admits that she stopped walking but asserts that she only did so in order to obtain better cell phone reception. Ms. Bush testified that the only statement Sgt. Renegar made was that he was a police officer in response to Ms. Bush telling the 911 dispatcher that she was afraid of "this man" following her (*i.e.*, Sgt. Renegar). *See* Def.s' Ex. K at 1:55-2:00 (Doc. No. 29-11). Ms. Bush responded, "I don't care what he is." *Id.* at 2:01-2:04.

Sgt. Renegar then initiated an arrest for defiant trespass. In doing so, Sgt. Renegar reached for Ms. Bush's phone in her left hand. According to Ms. Bush, she "instinctively pulled" her left arm back. Bush Dep. Tr. at 76:12-15, Pl.'s Ex. P1 (Doc. No. 37-1). Ms. Bush began yelling and pulling away from Sgt. Renegar. After Sgt. Renegar reached for Ms. Bush's phone, it landed in the snow behind her.[2] Both parties agree that during this altercation, Sgt. Renegar stated that he would tase Ms. Bush, and, in response, Ms. Bush stated that she had a heart condition. Both parties also contend that Sgt. Renegar used his body weight to force Ms. Bush onto a snowbank and/or the ground. However, the parties dispute the sequence of events. According to Ms. Bush, she first turned around to look for her phone after it landed on the ground. Ms. Bush states that Sgt. Renegar then forced her to the ground and, after she was already on the ground, he stated that he would tase

---

[2]       The parties dispute whether the phone simply dropped or was thrown into the snow by Sgt. Renegar.

her. According to Sgt. Renegar, he attempted to gain control of Ms. Bush's left arm and then right arm after the phone landed on the ground. Sgt. Renegar testified that he warned her to stop resisting or else he would tase her. He asserts that it was not until after Ms. Bush stated that she had a heart condition that he forced her onto the snowbank and/or ground.

Once Ms. Bush was down, Sgt. Renegar placed handcuffs on Ms. Bush's wrists. Sgt. Renegar testified that Ms. Bush resisted arrest while on the ground. Ms. Bush testified that she was able to free her right hand to grab her phone from the snow but was not otherwise moving her body while pinned on the ground.

According to Sgt. Renegar, he lifted Ms. Bush off the ground by placing his hand under her arm. Thereafter, Sgt. Renegar asserts that Ms. Bush resisted walking with him by instead dragging her feet and leaning back. According to Ms. Bush, Sgt. Renegar "picked [her] up by the handcuffs" and "started dragging [her] back toward the front of the building[,]" first by pulling on the handcuffs and then her arm. *Id.* at 88:3-91:3.

Shortly after Sgt. Renegar and Ms. Bush travelled to the facility's carport area, Sgt. Lewis arrived at Park Lane to assist Sgt. Renegar. According to Ms. Bush, Sgt. Lewis parked and then Sgt. Renegar "pulled [her] to the left, hyperextended[3] [her] left leg, and [she] fell to the ground." *Id.* at 92:24-93:6. According to Sgt. Lewis, Ms. Bush directly looked at him as he was pulling into the carport area and "then she dropped herself to the ground." Lewis Dep. Tr. at 56:23-57:6, Def.s' Ex. B (Doc. No. 29-2). Sgt. Renegar, as well as possibly Ms. Ferry and Sgt. Lewis, then told Ms. Bush to stand up. The sergeants contend that Ms. Bush failed to comply with their demand, whereas Ms. Bush claims at this point she was simply unable to stand up on her own. Sgts. Renegar

---

[3]     Ms. Bush clarified that in stating that her left leg "hyperextended", she meant that she "lost [her] footing and [her] leg went backward like in an unnatural position, the opposite direction." Bush Dep. Tr. at 93:23-94:1, Pl.'s Ex. P1 (Doc. No. 37-1).

and Lewis lifted Ms. Bush up by placing their hands under her arms.  Ms. Bush provided no assistance as Sgts. Renegar and Lewis attempted to transport her to Sgt. Lewis' vehicle.

The sergeants contend that they requested multiple times for Ms. Bush to sit in Sgt. Lewis' patrol car, but that Ms. Bush failed to comply with these requests.  Conversely, Ms. Bush insists that the sergeants carried and shoved her into the backseat of Sgt. Lewis' patrol car without communicating any instructions.  Ms. Bush's right leg remained out of the vehicle, which she maintains was due to the sergeants' rough handling of her, not any failure to comply with police commands.  Eventually, Ms. Bush was entirely in the police car.

Sgt. Lewis began driving with Ms. Bush in the back of his patrol car.  Sgt. Lewis' dash cam was recording during the remainder of the encounter.  While Sgt. Lewis was driving, Ms. Bush told him that she thought her arm was injured.  In response, Sgt. Lewis drove Ms. Bush to Chester County Hospital with Sgt. Renegar following in his vehicle.  After arriving at the hospital, Sgt. Lewis opened the rear passenger door and instructed Ms. Bush as to how to get out of the car. Sgt. Lewis testified that he "assist[ed]" Ms. Bush out of the car, *id.* at 83:8-10, whereas Ms. Bush testifies that Sgt. Lewis pulled her toward the front of his car.  Sgt. Lewis then directed Ms. Bush to "walk backwards", Def.s' Ex. N. at 17:05-17:09.  According to the sergeants, Ms. Bush failed to comply and instead pulled away from Sgt. Lewis.  They assert that they pressed Ms. Bush against Sgt. Lewis' car due to her failure to comply with police orders and to secure the vehicle. Conversely, Ms. Bush testifies that Sgt. Lewis was still pulling her and began yelling at her. According to Ms. Bush, the sergeants slammed her into the police car without provocation.  Ms. Bush's head hit the vehicle.  Ms. Bush repeatedly yelled for security as the sergeants escorted her into the emergency room.

6

At the hospital, Ms. Bush complained to Jennifer Walsh, a registered nurse, of pain in her right hand, neck, and back. Ms. Walsh did not observe any bleeding but noted a small abrasion to Ms. Bush's right forearm. Sgt. Lewis testified that he observed a small amount of blood on Ms. Bush's wrist and friction marks on her arms. Ms. Bush was treated and released into police custody that same day. Although Ms. Bush was charged with Resisting Arrest, Defiant Trespass, and Disorderly Conduct Hazardous/Physical Offense, she was only convicted of the latter two.

Pursuant to Westtown-East Goshen Police Department policy, reasonable force may be used by an officer when confronted with resistance, including verbal resistance, passive physical resistance, or defensive physical resistance. Verbal resistance includes verbal responses communicating an unwillingness to cooperate or submit to an officer's control. Passive physical resistance is presented by passive action. Defensive physical resistance includes pushing or pulling away from an officer to avoid the officer establishing control. The policy provides that an officer may use verbal control and compliance techniques, such as strength, leverage, takedowns, holds, and come-along techniques, to establish control over a resisting subject.

## LEGAL STANDARDS

### I.     Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might well affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56 of the Federal Rules of Civil Procedure, the Court

must view the evidence presented in the motion in the light most favorable to the non-moving party and draw all evidence in that party's favor. *Id.* However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where the non-moving party bears the burden of proof on a particular issue, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party then must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II.    Qualified Immunity

The doctrine of qualified immunity has long "protect[ed] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555

U.S. 223, 231 (2009)) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The burden of establishing qualified immunity falls to the official claiming it as a defense." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011). "In resolving questions of qualified immunity, 'courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct.'" *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (quoting *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis" to tackle first. *Pearson*, 555 U.S. at 236.

When determining whether the facts alleged demonstrate that an officer's conduct violated a constitutional right and whether that right was clearly established, a court should view the facts and draw reasonable inferences "in the light most favorable to the party asserting the injury[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[W]hether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007) (citing *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004)). Courts must deny summary judgment if, according to the plaintiff's version of the facts, a defendant has violated the plaintiff's clearly established constitutional rights. *Helms v. Ryder*, No. 14-2470, 2017 WL 1356323, at *4 (D.N.J. Apr. 12, 2017) (citing *Giles v. Kearney*, 571 F.3d 318, 327 (3d Cir. 2009)).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Recently, "the Supreme Court reiterated the 'longstanding principle that clearly established law should not be

9

defined at a high level of generality,' but must instead 'be particularized to the facts of the case."

*Bland*, 900 F.3d at 83 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam)). Although

there need not be a "'case directly on point'" to define a clearly established right, "'existing

precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix v.*

*Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other

words, the "'legal principle [must] clearly prohibit the officer's conduct in the particular

circumstances before him. The rule's contours must be so well defined that it is clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting

*District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)); *Mullenix*, 136 S. Ct. at 308 ("The

dispositive question is whether the violative nature of particular conduct is clearly established," an

inquiry that "must be undertaken in light of the specific context of the case, not as a broad general

proposition."). Therefore, "qualified immunity protects 'all but the plainly incompetent or those

who knowingly violate the law.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S.

335, 341 (1986)).

Courts in this Circuit "look first for applicable Supreme Court precedent," but "[i]f none

exists," courts then "consider whether there is a case of controlling authority in our jurisdiction or

a robust consensus of cases of persuasive authority in the Court of Appeals [that] could clearly

establish a right for purposes of qualified immunity." *Barna v. Bd. of Sch. Directors of Panther*

*Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (quotations and citations omitted); *see Fields*

*v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017).

## DISCUSSION

The sergeants argue that the undisputed material facts demonstrate that the force they used

on Ms. Bush was objectively reasonable, and even if not, that they are entitled to qualified

immunity as to the § 1983 claims. Ms. Bush counters that disputed issues of fact preclude summary judgment on the merits or because of qualified immunity. The Court finds that material factual disputes at issue do preclude the Court from granting summary judgment.

## I.    Excessive Force Claim

Ms. Bush brings an excessive force claim against both sergeants. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)). Because the parties do not dispute that a seizure occurred, the inquiry turns on whether the force used to effectuate the seizure was reasonable. In assessing an excessive force claim, a district court determines whether, under the totality of the circumstances, "'the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). The reasonableness of a police officer's use of force to effectuate an arrest is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Graham*, 490 U.S. at 396).[4]   When evaluating reasonableness, the Court must

---

[4]    The Third Circuit Court of Appeals has also recognized factors enumerated in *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) and *Whitley v. Albers*, 475 U.S. 312 (1986). The *Sharrar* factors include: "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar*, 128 F.3d at 822. The *Whitley* factors include: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to

consider the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

"Given that determining the reasonableness of a seizure demands such a case-sensitive, fact-specific assessment, it is a determination usually best made by a finder of fact, after an adjudication on the merits." *Garey v. Borough of Quakertown*, No. 12-0799, 2013 WL 3305222, at \*4 (E.D. Pa. July 1, 2013). "To the extent a police officer's version of events differs from the plaintiff's on summary judgment, a police officer who is accused of having used excessive force is not precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff, but that *contention* . . . must be considered at trial.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 408 (E.D. Pa. 2019) (quoting *Rivas v. City of Passaic*, 365 F.3d 181, 199 (3d Cir. 2004)) (quotation marks and citation omitted) (emphasis in original). However, "'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" *Kopec*, 361 F.3d at 777 (quoting *Raso*, 183 F.3d at 290).

The sergeants contend that Ms. Bush's excessive force claim fails because their actions were objectively reasonable. According to the sergeants, they used a reasonable amount of force in response to Ms. Bush's resistance, which persisted throughout the entire encounter at Park Lane. The sergeants highlight that it took Ms. Bush approximately two minutes to travel from the doors of Park Lane to the spot where the incident occurred and that she was walking slowly, called 911, and had stopped. According to all parties, after Mses. Ferry and Goodall stated in response to Sgt. Renegar's question that they wanted Ms. Bush to leave the property, Ms. Bush proceeded to the

---

temper the severity of a forceful response." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley*, 475 U.S. at 319).

receptionist's desk, signed out, and left the Park Lane building. Although the sergeants contend that upon leaving the building she was instructed to continue walking and leave the property, Ms. Bush testifies that Sgt. Renegar did not instruct her in any way. Therefore, according to Ms. Bush, she did not refuse to comply with any police directive by allegedly walking slowly, calling 911, and stopping to obtain better cell phone reception. According to Ms. Bush's versions of the facts, Sgt. Renegar—without provocation or a failure to comply with any demand—used enough force to reach for her phone, tackle her, pin her to the ground, and handcuff her while pinned to the ground. The sergeants further fault Ms. Bush for admitting that she "instinctively pulled back" when Sgt. Renegar reached for her phone. But according to Ms. Bush's versions of the facts, Sgt. Renegar reached for her phone without any provocation or failure to comply with a demand.

Although Sgt. Renegar contends that Ms. Bush was resisting arrest while pinned to the ground, Ms. Bush testifies that she freed her right arm free to retrieve her phone before she was handcuffed. Even if the Court were to assume that this conduct justified Sgt. Renegar's use of some force, "[an officer] may not continue to use such force after it has become evident that the threat justifying the force has vanished." *Lamont v. New Jersey*, 637 F.3d 177, 184 (3d Cir. 2011). Therefore, this conduct alone does not necessarily justify the force used after Ms. Bush was already handcuffed and unable to free her hands. Ms. Bush also cites this proposition when arguing that even if Sgt. Renegar was justified in forcing her to the ground, he was not justified in purportedly lifting and dragging her by the handcuffs.

Whereas Sgt. Renegar contends he then lifted Ms. Bush off the ground by placing his hand under her arm, Ms. Bush asserts that he lifted and dragged her, first by pulling on the handcuffs and later her arm. Although the sergeants contend that Ms. Bush intentionally dropped herself to the ground, Ms. Bush asserts that her leg "hyperextended" and she fell to the ground after Sgt.

13

Renegar pulled her.  The parties also dispute whether Ms. Bush failed to comply with their demands to stand up or whether Ms. Bush was simply unable to stand up on her own.  Moreover, whereas the sergeants testified that Ms. Bush failed to comply with their multiple requests to sit in Sgt. Lewis' patrol car after lifting her under her arms, Ms. Bush asserts that the sergeants carried and shoved her into the backseat without communicating to her.  Although a jury may certainly find the sergeants' actions to be objectively reasonable when considering their version of the events, the same may not be true if the jury determines that Ms. Bush's side of the story is credible.

The parties also dispute what occurred outside of the hospital.  According to the sergeants, Ms. Bush failed to comply with their directive to walk backwards after getting out of the car and instead pulled away from them.  According to Ms. Bush, however, she was initially being pulled out of the vehicle by Sgt. Lewis when, suddenly and without provocation, she was pushed onto the side of the patrol car by both sergeants.  The sergeants argue that the dueling deposition testimony can be easily resolved by examining the "undisputed video evidence" of Ms. Bush's arrival at the hospital recorded by Sgt. Lewis' dashboard camera.  Def.s' Mem. in Supp. of Mot. for Summ. J. at 8 (Doc. No. 30-1).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  However, "courts have declined to apply the limited exception set forth in *Scott v. Harris* where a videotape or other mechanical depiction does not capture the whole incident or the entire arrest, or where the videotape or mechanical depiction is susceptible to multiple reasonable interpretations." *Patterson v. City. of Wildwood*, 354 F. App'x 695, 698 (3d Cir. 2009) (citations omitted).

14

Despite the sergeants' assertion to the contrary, this video does not fully contradict Ms. Bush's testimony. The audio from the video reveals that Ms. Bush was directed to walk backwards several times and that she was told, "You need to stop. You need to stop right now." Def.s' Ex. N at 17:10-15.[5] However, there is no clear view of the sergeants or Ms. Bush during the key time period at issue. Although one of the sergeants did indeed instruct Ms. Bush to walk backwards multiple times, the Court refrains from inferring that Ms. Bush must have refused to comply with this police directive in the absence of clear video footage. For the Court to assume that Ms. Bush refused to comply with this instruction would mean the Court was not following the admonition that it must assume all facts and inferences in favor of the non-moving party, *i.e.*, Ms. Bush. Similarly, an audio recording showing that one of the sergeants told Ms. Bush that she needed to stop does not definitively prove that she was resisting. Although a fact finder might certainly rely on this video footage and other evidence presented at trial to determine that Ms. Bush was being noncompliant, it is not clear enough to justify the application of such a limited exception at this point.

Whether the amount of force applied by an officer was reasonable is normally an issue for the jury. When accepting as true Ms. Bush's version of events, the *Graham* factors, viewed in the context of the totality of the circumstances, could weigh in her favor. First, Ms. Bush was convicted of a Defiant Trespass and Disorderly Conduct. Second, there is a dearth of evidence suggesting that Ms. Bush posed a threat to safety or evaded arrest. Third, if taking Ms. Bush's evidence at face value, she was not resisting arrest or refusing to comply with police orders. A reasonable juror could find that the amount of force the sergeants used was not objectively reasonable in the event they determine that Ms. Bush's evidence is credible. Accordingly, the

---

[5]     The audio from the video footage also shows that between these communications, Ms. Bush began stating, "You have no . . ." Def.s' Ex. N. at 17:08-10.

15

Court finds it appropriate for a jury, rather than the Court, to resolve the many material facts that remain in dispute in order to determine the reasonableness of the sergeants' actions.

The sergeants alternatively argue that they are entitled to qualified immunity for Ms. Bush's excessive force claim. As a preliminary note, the Court reiterates that "[t]he burden of establishing qualified immunity falls to the official claiming it as a defense." *Burns*, 642 F.3d at 176. The sergeants' insistence that Ms. Bush has not done enough to show that they violated a clearly established right veers too close for comfort to attempting to move their burden from their shoulders to hers.

In any event, "[b]oth avenues to qualified immunity, i.e., no violation or, if a violation it is excused because [the sergeants] made a reasonable mistake of law or fact, hinge on disputed facts[.]" *Klein*, 374 F. Supp. 3d at 409. As noted, viewing the facts in the light most favorable to Ms. Bush, a jury could conclude that the sergeants used excessive force when effectuating her arrest. "Reasonableness under the second factor [of the qualified immunity analysis] is an issue of law for the district court to determine; however, if there are facts material to the determination of reasonableness in dispute, then that issue of fact should be decided by the jury." *Geist v. Ammary*, 40 F. Supp. 3d 467, 485 (E.D. Pa. 2014) (citing *Barton v. Curtis*, 497 F.3d 331, 335 (3d Cir. 2007)). Given the factual disputes about Ms. Bush's conduct, which for purposes of summary judgment the Court views in the light most favorable to her, the Court cannot conclude at this time that the sergeants' conduct was consistent with the Fourth Amendment, or that they acted lawfully in light of clearly established law. *See id.*; *Garey*, 2013 WL 3305222, at *6. Rather, the qualified immunity defense is to be determined by a finder of fact upon the culmination of a trial on the merits. *Garey*, 2013 WL 3305222, at *6 (collecting cases). For these reasons, a determination

16

that the sergeants are entitled to qualified immunity with respect to the excessive force claim would not be appropriate at this time.

In sum, the Court finds that disputed issues of material fact preclude the Court from granting summary judgment in favor of the sergeants on the basis that their actions were objectively reasonable.[6] Moreover, the Court denies the motion for summary judgment without prejudice with respect to Ms. Bush's excessive force claim on the basis of the defense of qualified immunity. *See, e.g., Geist v. Ammary*, 617 F. App'x 182, 186 (3d Cir. 2015) (dismissing interlocutory appeal on the basis of lack of jurisdiction because the district court found that disputed issues of material fact precluded ruling on whether officer was entitled to qualified immunity on excessive force claim). The sergeants may raise qualified immunity as a defense after the fact finder resolves the disputed issues. *See Geist*, 40 F. Supp. 3d at 483 ("Qualified immunity, however, may be raised again as a defense after the disputes issues of fact are resolved.").

## II.  Failure-to-Intervene Claim

Sgt. Lewis argues that the failure-to-intervene claim against him fails because his actions were objectively reasonable, or alternatively, that he is entitled to qualified immunity. A police

---

[6]    In *Forbes v. Twp. of Lower Merion*, 313 F.3d 144 (3d Cir. 2002), the Third Circuit Court of Appeals set forth a supervisory rule requiring district courts to specify "material facts that are and are not subject to genuine dispute and to explain their materiality" in the event "a summary judgment motion based on qualified immunity is denied on the ground that material facts are in dispute." *Id.* at 146. Therefore, the Court determines that the following genuine disputes of material fact remain: (1) whether Sgt. Renegar instructed Ms. Bush to leave the Park Lane premises and walk back to her car and that refusing to do so may lead to her arrest; (2) the events that occurred, and the order of those events, from the moment in which Sgt. Renegar reached for Ms. Bush's phone until Ms. Bush was fully handcuffed; (3) whether Sgt. Renegar lifted Ms. Bush by the handcuffs; (4) whether the sergeants dragged Ms. Bush when confronted with her failure to comply with police orders and her resistance to arrest (both before and after Sgt. Lewis' arrival); (5) what caused Ms. Bush to fall to the ground when Sgt. Lewis arrived at Park Lane; (6) whether Ms. Bush refused demands to stand up and enter the patrol car; (7) whether Ms. Bush's right leg remained out of the patrol car due to her resisting arrest; and (8) whether Ms. Bush failed to comply with police directives outside of the hospital. These disputes are material because they go to whether Ms. Bush refused to comply with police command and resisted arrest.

officer is liable under § 1983 when he "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "In the context of excessive force cases, 'a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force[.]" *Klein*, 374 F. Supp. 3d at 419. "[A]n officer is only liable if there is a realistic and reasonable opportunity to intervene." *Mensinger*, 293 F.3d at 651. Moreover, a duty to intervene attaches only if the officer knew of and acquiesced in the unconstitutional treatment of the plaintiff. *See id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995)). "In the context of excessive force cases, 'a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force[.]" *Id.*

As noted, Ms. Bush withdrew her failure-to-intervene claim against Sgt. Renegar. In doing so, Ms. Bush acknowledged Sgt. Renegar's position that both he and Sgt. Lewis held Ms. Bush against the patrol car, and that therefore, she no longer believed it was appropriate to bring a failure-to-intervene claim against Sgt. Renegar on this basis. Following this same reasoning, the Court construes this concession as Ms. Bush suggesting that allegations concerning Sgt. Lewis' actions taken outside of the hospital would also not support a failure-to-intervene claim. Therefore, the Court limits its analysis to Sgt. Lewis' actions taken outside of Park Lane.

Sgt. Lewis' arguments concerning the objective reasonableness of his actions as they relate to the failure-to-intervene claim are quite simple. He asserts that because he believes that Ms. Bush failed to show that he used excessive force, her failure-to-intervene claim fails as well. Moreover, he contends that because Sgt. Lewis arrived after Ms. Bush was handcuffed, he could

18

not intervene regarding such conduct. Because the Court declines to grant summary judgment as to the excessive force claim in the face of material facts in dispute, the former argument also fails.[7]

As for the latter argument, Ms. Bush points out that, according to her version of the story, Sgt. Lewis was present when Sgt. Renegar purportedly dragged her to the carport and caused her to fall. According to Ms. Bush, he then assisted Sgt. Renegar in carrying her to and pushing her into the patrol car, all of which Ms. Bush asserts was done in the absence of resistance and refusals to comply with police orders. If viewing the facts in the light most favorable to Ms. Bush, Sgt. Lewis did have an opportunity to intervene in stopping this alleged unconstitutional conduct, regardless of his late arrival. Because a reasonable jury could find that Sgt. Lewis failed to intervene in the alleged use of excessive force, when assuming the veracity of Ms. Bush's evidence, the Court concludes that questions of material fact remain with respect to this claim. Accordingly, granting summary judgment on the merits of the objective reasonableness inquiry is not appropriate.

Like the excessive force claim addressed above, the Court's qualified immunity analysis as to this claim similarly hinges on disputed facts concerning Ms. Bush's conduct.[8] Therefore, the

---

[7]       "Although legally distinct, the fate of plaintiff's failure to intervene claim is closely linked to that of the excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene." *Lora-Pena v. Denney*, 760 F. Supp. 2d 458, 468 (D. Del. 2011) (cleaned up) (collecting case). It follows that the inverse is true: if there was excessive force then there can also be a failure to intervene, provided that the officer had a realistic and reasonable opportunity to intervene.

[8]       For the sake of thoroughness, the Court addresses one additional argument advanced by Sgt. Lewis. Sgt. Lewis relies on *White v. Pauly*, 137 S Ct. 548 (2017), in support of his argument that he is entitled to qualified immunity as to this claim. In *White*, an officer who arrived late to an ongoing police action witnessed shots being fired by an individual in a house shot and killed an armed occupant of the house without giving a warning. *Id.* at 549. The Supreme Court determined that "[c]learly established federal law does not prohibit a reasonable officer who arrives late to an ongoing policy action in circumstances like this from assuming that proper procedures . . . have already been followed" and that "[n]o settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers." *Id.* at 552. In *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018), the Third Circuit Court of Appeals relied on this language in granting police officers qualified immunity where the officers

Court is not in a position to conclude at this time that Sgt. Lewis acted consistently with the Fourth Amendment or lawfully in light of clearly established law given the factual disputes at issue.

In sum, the Court concludes that disputed issues of material fact preclude it from granting summary judgment in Sgt. Lewis' favor on the basis that his actions were objectively reasonable.[9] The Court similarly denies the motion summary judgment without prejudice with respect to Ms. Bush's failure-to-intervene claim on the basis of qualified immunity. Again, Sgt. Lewis may raise qualified immunity as a defense after the fact finder resolves the disputed issues.

## III.    Assault and Battery Claim

The sergeants contend that for the same reasons they believe they used objectively reasonable force on Ms. Bush, they are entitled to summary judgment as to the state assault and battery claim.

"Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.,* 170 A.2d 419, 421 (1950)).  "In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Id.* at 294; *see also Pelzer v. City of Phila.*, 656 F.

---

joined in the pursuit of an armed carjacking suspect and discharged their weapons out of concern that the suspect may attempt to flee after the suspect crashed the car. *Id.* at 85-87.

The Court stresses the "in circumstances like this" language articulated by the Supreme Court. *White*, 137 S. Ct. at 552. Although surely in dangerous, high-stakes situations it is appropriate for an officer to assume that the officers already on the scene have followed proper protocols, the same cannot necessarily be true when facing a much more controlled and safer situation where the arrestee is already handcuffed. The Court thus declines to find the sentiment set forth in *White* and *Bland* to be particularly applicable here.

9       The material factual disputes at issue for this claim track facts four through seven enumerated in list in footnote 5.

Supp. 2d 517, 539 (E.D. Pa. 2009) ("Similar to a Fourth Amendment claim, the officer's liability will hinge on the reasonableness of the force used.") (citation omitted).

For the reasons discussed above with respect to Ms. Bush's excessive force claim, the Court concludes that material facts in dispute concerning the reasonableness of the force used preclude the Court from granting summary judgment as to the assault and battery claim.

### CONCLUSION

For the foregoing reasons, the Court denies the sergeants' motion for summary judgment with respect to the claims which have not been withdrawn. With respect to the sergeants' invocation of qualified immunity as to these claims, the motion is denied without prejudice. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE